No. ——

First Circuit

QUEBADEAUX v. CALADIA PRODUCTION COMPANY, INC.

(December 22, 1925. Opinion and Decree)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Master and Servant —Par. 154, 156.

An injured employee who dies as a result of a bruise, cut or abrasion on his thumb which becomes infected is covered by Section 38 of the Workmen's Compensation Act No. 20 of 1914, as amended by Act 38 of 1918.

Appeal from the Parish of Acadia, Hon. W. W. Bailey, Judge.

Suit by Mrs. Mary Cobena Quebadeaux, the surviving widow of Henry Quebadeaux, for herself and minor son for compensation under Section 8, Subsection 2 (b) of the Workmen's Compensation Act No. 20 of 1914 for the death of her husband. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Medlenka and Bruner, of Crowley, attorneys for plaintiff, appellee.

Harry Sellers, of New Orleans, attorney for defendant, appellant.

MOUTON, J. This suit was instituted under the Employer's Liability Act by Mrs. Mary Cobena Quebadeaux as surviving widow of Henry Quebadeaux, for herself and for her minor son, against Caladia Production Company and the General Accident-Fire and Life Insurance Company of Perth, Scotland.

Judgment was rendered against the Caladia Production Company from which said company appeals.

Henry Quebadeaux, deceased husband of the plaintiff, was injured while working for the Caladia Production Company in the Evangeline Oil Field of Acadia parish. He was engaged in the building of a reservoir for the storage of oil when he was injured. His work consisted in pounding or "tamping" the dirt as it was dug out of the pit and thrown by his fellow workmen on the sides of the reservoir. In doing this work he was using a pounder which was between five and six feet in length. Near the top end of the handle of the pounder there was a bump from which "a nail came out". The handle of the pounder was black, full of oil and grease; and was rusty where the nail stuck out. It was on a Thursday evening that deceased was hurt. He had left his home on the morning of that day in perfect health. When he returned home in the evening from his work, he complained of having bruised his thumb, and showed his wife a "red place" on his thumb. The next day he exhibited it to Thersac Doucet, a co-laborer, who said, a "little red spot" could be seen on his thumb. He was first treated for his injury by Dr. Kramer. The doctor says, the first time he examined the thumb of deceased he saw no abr s n, but could see the infection of the tissues. This examination, the doctor says, was not microscopical. He explains, however, that a break could have been on the thumb without being discernable to the naked eye, but says, that there "must have been an opening to allow the infection in". The physician was questioned as to the general condition of the hands of the deceased. He answered that they were rough and cracked, and presented the appearance of an ordinary workman's hands. He explained that the infection could not have entered by these cracks or creases, unless there had been an opening in the skin, but that a small cut, just skin deep, could cause an infection. The logical inference is, from that state of facts, that there must have been an abrasion, bruise or cut there, perhaps slight, and not perceptible to the naked eye, but from which the poison entered the thumb of deceased. The primary cause of the infection, the physician says, was from the thumb, where the pus was first formed, and from there travelled to every organ of the body, and finally resulted in blood poison from which deceased died.

Counsel for defendant company contends that under the word "accident" as used in Section 38 of the Compensation Act, that plaintiff is not entitled to recover. The portion of the Act which he quotes as

pertinent to the issue reads: "The terms 'injury' and 'personal' injuries shall include only injuries by violence to the physical structure of the body and such diseases or infections as naturally result therefrom." The only possible deduction here is that by some sudden movement or jerk of his hand, deceased while engaged in tamping the dirt brought it in violent contact with the bump on the handle of the pounder or the nail that was coming cut of it, thus causing an abrasion, bruise or slight cut in the skin of the thumb. This injury, though it might have been invisible or imperceptible to the senses, was certainly the result of some violence to the thumb. Dr. Kramer says, deceased had an abscess of the soft tissues of the thumb. The Act speaks of "violence to the physical structure of the body"; which is quoted by defendant. Tissues form a structural part of the human body, and as an abscess appeared in the tissues of the thumb, there must have unquestionably been some violence to the physical structure of the deceased. We do not think, however, that in the interpretation of the Act we should be restricted to such a narrow construction. If we did, its humane purpose would be destroyed, and which would be violative of the doctrine announced in 152 La. 994. The bruise, cut or abrasion permitted the poison to enter the blood stream of deceased, and caused the fatal infection as a "natural result therefrom". This result brings the case under the terms used in Section 38, of the Compensation Act. It was held in L. R. A. 1916, p. 281, that an employee had the right to recover, under the Compensation Law, for blood poisoning which resulted from an abrasion of the skin; see also same volume, pages 292-93. Under our statutes the same rule should apply.

In the course of the opinion in the case of Dyer vs. Rapides Lumber Company, 157 La. 1091, 98 South. 677, the court said: "The statute is essentially intended to provide insurance for the employee against all the risks · to which he may be exposed by his employment." The accident in question, as we read the statute, is one of the risks intended to be covered by its provisions, and we therefore conclude that the judgment rendered in favor of plaintiff is correct.